**WADIE BOWLES and OLLIE MILLER v. THE STATE OF FLORIDA**

14 So. (2nd) 269              June Term, 1943
June 25, 1943               Division B

220

*Guy Gillen & W. H. Wilson, Jr.,* for appellants.

*J. Tom Watson,* Attorney General, and *Woodrow M. Melvin,* Assistant Attorney General, for appellee.

SEBRING, J.:

Wadie Bowles, Ollie Miller, and one Patterson were indicted and tried for the larceny of three bulls alleged to have been the property of one Lawrence Davis, Jr., and Lizzie Davis. At the close of the case for the prosecution Patterson took the witnesses stand and testified in his own defense. Bowles and Miller offered no testimony. Motions for instructed verdicts were made on behalf of all of the defendants. Patterson's motion was granted, and the jury instructed to return a verdict of not guilty as to the charge against him. The motions filed on behalf of Bowles and Miller were denied, and the case against them submitted to the jury. The jury found both of them guilty as charged. Judgment was entered on the verdict and sentence was imposed. The appellants maintain that the evidence is not sufficient to sustain the verdict, in that the element of nonconsent of the owner to the taking of the property has not been proven.

The evidence is brief. From the record it appears that the defendant, Patterson, was in the business of buying and selling livestock. Lawrence Davis, Jr., was the owner of the three yearling bulls alleged to have been stolen. Lizzie Davis

had no property interest in the animals whatsoever, although she had kept them on her farm and had tended and cared for them for the owner. Patterson had purchased the animals in good faith, from Bowles, Miller and Lawrence Davis, Jr., and had paid full value for them. The sale and delivery had occurred in the daytime at a house where Miller was then living, which was not far from the range or pasture where the animals ordinarily grazed. In dickering over the price to be paid for the property, Bowles and Miller had done most of the talking on behalf of the seller, although Davis was present and had taken part in the discussion. When a purchase price had been finally agreed on, Patterson had paid the money over to Miller in the presence of Bowles and Davis. At no time had Davis objected to the transaction or indicated any unwillingness to part with possession of his property, but, on the contrary, had assisted the others in loading the cattle into a truck, to be transported away from the scene of the sale.

Lawrence Davis, Jr., the owner of the property, was not used as a witness. His grandmother, Lizzie Davis, was called and testified that she had reared her grandson from early infancy; that he had been subject to fits as a baby; that he did not have "good knowledge" or "mother wit," and that his mind was likely to "vary away;" that "he knows how to do what you tell him but there are things that he cannot do by himself;" that she "guessed" that the defendants, Bowles and Miller, knew that her grandson was "not right bright like the other boys," for they had lived in the same neighborhood with him since early childhood.

Lawrence Davis, Sr., the father of the owner of the property, testified that his son was 22 years of age at the time of the sale of the cattle; that he had gone to school for only three years in his lifetime and had never been able to complete the first reader; that he did not have knowledge enough to handle a business transaction, or to use money, or to buy anything with it.

As is apparent from the transcript of the record, the State rests its case upon the theory that at the time of the sale and delivery of the property the owner was of such

unsound mind as to be mentally incapable of giving consent to the transaction—all of which was known to the defendants —and that consequently a larceny occurred when Bowles and Miller procured the sale and delivery of the animals to Patterson.

The law is well settled in this jurisdiction that the nonconsent of the owner to parting with his property is one of the essential elements of the crime of larceny that must be proven by the prosecution beyond a reasonable doubt. Albritton v. State, 81 Fla. 684, 88 So. 623. This element will not be presumed merely from the act of taking. This ingredient of the offense may be established by circumstantial evidence, when it is shown that the owner was not present at the time of the asportation and the testimony is such as to exclude every reasonable presumption that the owner consented. Albritton v. State, *supra.*

In the case which we have before us now, the question arises whether nonconsent may ever be established by circumstantial evidence when the owner *is* present participating in the transaction.

We think that in such case proof of nonconsent may be made by circumstantial evidence, if it is likewise shown that even though the owner was actively present he was so mentally incompetent at the time that he could not give consent to the taking of his property; that such fact was known to the defendant, or such facts were in his possession as would put a reasonably prudent person on inquiry as to the mental incompetency of the owner.

It can hardly be questioned that on the fact of the transaction, Davis apparently gave his consent to the sale and delivery of the cattle to Patterson; provided he was then mentally capable of giving such consent. Proof to the contrary is not made to appear, unless it is supplied by the testimony given by Lizzie Davis and Lawrence Davis, Sr. But this testimony falls far short of excluding every reasonable presumtion that the owner of the property consented to the taking. It does not show, for example, that Lawrence Davis, Jr., was an idiot, an imbecile, or person insane; or that he was under legal guardianship. Nor does anything appear

in the record to warrant a conclusion that the defendants were guilty of fraud, duress, or undue influence in their relations with the owner of the cattle. At most, all that can be said for the testimony is that it tends to indicate that Lawrence Davis, Jr., had some weakness of mind, and that, perhaps, his mental processes were not the equal of those of his contemporaries; not that he did not have a sufficient degree of reason and comprehension to understand fully the nature of the transaction in which he became involved and to given consent to parting with possession of his property.

The judgment appealed from should be reversed.

It is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.